COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Humphreys and Senior Judge Duff


JON ROBIN DAVIS

MEMORANDUM OPINION*
v.   Record No. 1674-00-3                PER CURIAM
NOVEMBER 14, 2000
SHADE EQUIPMENT COMPANY, INC. AND
 FEDERATED MUTUAL INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(A. Thomas Lane, Jr., on brief), for
appellant.

(Robert M. McAdam; Jones & Glenn, P.L.C., on
brief), for appellees.


Jon Robin Davis contends that the Workers' Compensation

Commission erred in finding he failed to prove that he was

totally disabled from employment after December 1, 1999. Upon

reviewing the record and the briefs of the parties, we conclude

that this appeal is without merit. Accordingly, we summarily

affirm the commission's decision. See Rule 5A:27.

On appeal, we view the evidence in the light most favorable

to the prevailing party below. R.G. Moore Bldg. Corp. v.

Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). So

viewed, the evidence proved Davis sustained a compensable left

knee injury on September 27, 1999, while working for employer.

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Dr. Rick Stough reported that Davis had sustained no disability from work as a result of the accident.  A work status report indicated, however, that Davis could "resume light-duties" on September 27, 1999 through October 1, 1999, with limited use of his legs.  Although Davis was to have a follow-up visit on October 1, 1999, the record contains no evidence he did so.

Davis testified that when he returned to work after the September 27, 1999 accident, he presented his light-duty restrictions to employer.  His employer did not have any light-duty work and told Davis to do the best he could.  On October 20, 1999, Davis quit his job.  Davis testified that his knee was hurting that day and that John Kerns, employer's branch manager, made a comment that upset Davis and caused him to believe that employer was not concerned about his knee injury.

Kerns testified that when Davis returned to work after the accident, he told Davis to do what he felt he could do and that others in the shop would assist him if necessary.  Kerns also told Davis to let him know of any problems.  Davis performed all of his job duties up until October 20, 1999 and never reported to Kerns that he could not perform his job duties.

On November 10, 1999, Davis was examined by Dr. Stephen H. Martenson, an orthopedic surgeon.  Dr. Martenson noted that Davis had been released to light duty and quit his job when his employer required him to work on a ladder.  Dr. Martenson

-

diagnosed "left knee strain with probable ACL tear; rule out lateral meniscal tear, persistent loss of motion and swelling." Dr. Martenson limited Davis to sedentary work "until the diagnosis is clear and treatment is instituted appropriately" and indicated that the sedentary work restriction would remain in effect until December 8, 1999.

On December 1, 1999, Dr. Martenson reviewed Davis' MRI results, which showed a posterior horn medial meniscal tear and popliteal cyst formation. Dr. Martenson recommended that Davis undergo arthroscopic partial medial meniscectomy and noted that Davis "continues off work and an estimate would be three to six weeks postop to return to any kind of laboring type work if a sitting job is not available." Dr. Martenson recommended "no work until reevaluated" and indicated that surgery had been scheduled for December 14, 1999. Dr. Martenson noted that Davis' surgery had been cancelled due to his workers' compensation claim being contested.

Dr. Hetzel Hartley reviewed Davis' medical records upon employer's request. Dr. Hartley reported that he agreed with Dr. Martenson's November 10, 1999 note finding Davis capable of sedentary work. Dr. Hartley defined sedentary work as work in a seated position with no stair climbing, no prolonged standing or walking for more than ten minutes each hour, and no walking on uneven ground.

-

On appeal, Davis contends that Dr. Martenson removed him from work as of December 1, 1999, and, therefore, he was entitled to an award of temporary total disability benefits as of that date. In addressing this issue, the commission found as follows:

> [W]e note that [Davis] returned to work and was able to perform his regular work. The employer provided [Davis] with the opportunity to perform only the work he felt capable of doing. [Davis] made no complaints or indicated any difficulty in performing his work. He unilaterally, without any medical documentation, elected to quit work on October 20, 1999. [Davis] has made no effort to market his remaining capacity since that time. While we note that Dr. Martenson on December 1, 1999, took [Davis] out of work, this was done in anticipation of his surgery on December 14, 1999. There is no evidence [Davis'] condition worsened such that he was no longer able to perform light duty work. It appears that Dr. Martenson was under the mistaken impression that the employer was not willing to work within [Davis'] restrictions. [Davis] made no effort to return to the employer to determine if there was sedentary work available. [Davis] also made no effort to secure work from other employers. [Davis] described his limitations as being unable to bend and crawl like before the accident. However [Davis] was able to perform his work and the employer was willing to accommodate his needs. [Davis] provided no testimony of being totally disabled at this point. We note [Davis'] testimony that he did not need a cane or wheelchair. . . . In the absence of any statement from Dr. Martenson indicating that [Davis] was taken off work for any reason other than the fact that he was already not working and surgery was anticipated, we cannot find that [Davis] has borne his burden of proof.

-

Based upon Kerns' testimony, the commission, as fact finder, could reasonably conclude that employer provided Davis with work within his restrictions after his accident, that Davis was capable of performing that work, and that Davis quit his employment on October 20, 1999 for reasons unrelated to his injury.  Furthermore, based upon Dr. Martenson's records and letters, the commission could find that Dr. Martenson excused Davis from work after December 1, 1999, not because Davis was totally disabled from all employment, but rather, because Davis was already not working and was scheduled for surgery on December 14, 1999.  Nothing in Dr. Martenson's records established that Davis' condition worsened to the point that he could not perform light-duty or sedentary work as of December 1, 1999.  Furthermore, nothing in Dr. Martenson's records proved that he removed Davis from work as of December 1, 1999, because Davis was no longer capable of performing light duty or sedentary work.  "Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing."  Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991).

Based upon this record, we cannot find as a matter of law that Davis proved he was totally disabled as of December 1, 1999.  See Tomko v. Michael's Plastering, Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).  Therefore, in the absence of any

-

evidence that Davis marketed his residual work capacity after that date, we must affirm the commission's decision.

<u>Affirmed.</u>